UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENESAS ELECTRONICS AMERICA INC., <br><br>    Plaintiff, <br><br> v. <br><br> MONTEREY RESEARCH, LLC, <br><br>    Defendant. | Case No. 24-cv-06223-JSC <br><br> **ORDER RE: MOTION TO DISMISS, STAY, OR TRANSFER** <br><br> Re: Dkt. No. 22 |

In April 2024, Monterey Research LLC ("Monterey") sued Renesas Electric Corporation ("REL") and two reseller defendants in the Eastern District of Texas alleging infringement of four patents. Approximately five months later, the wholly-owned subsidiary of REL, Renesas Electronics America, Inc. ("REA"), filed the present action against Monterey seeking a declaratory judgment of non-infringement as to the same four patents. Pending before the Court is Monterey's motion to dismiss, stay, or transfer the present case under the first-to-file rule. (Dkt. No. 22.) After careful consideration of the parties' briefing, the Court concludes oral argument is not necessary, *see* N.D. Cal. Civ. L.R. 7-1(b), VACATES the December 12, 2024 hearing, and GRANTS Monterey's motion to stay the case pending resolution of the first-filed Texas action.

## BACKGROUND

### I.  COMPLAINT ALLEGATIONS

On September 3, 2024, REA filed the present suit against Monterey seeking declaratory judgment. (Dkt. No. 1.)[1] Specifically, "REA seeks a declaration of non-infringement of United States Patents Nos.: 6,243,300 ("the '300 patent"), 7,679,968 ("the '968 patent"), 7,089,133 ("the

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

'133 patent"), and 7,825,688 ("the '688 patent") (together, the "Patents-in-Suit")." (*Id.* ¶ 1.)

The complaint alleges Monterey—"a subsidiary of IP Value Management, a patent monetization company"—"expressly accused REA of infringing the Patents-in-Suit" in letters Monterey sent REA and REA's parent company, REL. (*Id.* ¶¶ 15, 17-19.) Specifically, Monterey sent REL and REA a letter in August 2018 alleging certain products infringe the '300 and '968 patents, and Monterey sent REL and REA another letter in March 2022 alleging certain products infringe the '133 and '688 patents. (*Id.* ¶¶ 17-18.) As additional enforcement conduct, REA's complaint describes Monterey's lawsuit in the Eastern District of Texas. (*Id.* ¶¶ 19-20.)

## II.   TEXAS ACTION

On April 10, 2024, approximately five months before REA filed the present case, Monterey sued REL and two additional defendants alleging infringement of the same four patents. *Monterey Research, LLC v. Renesas Elecs. Corp.*, No. 2:24-cv-00238 (E.D. Tex. Apr. 10, 2024) ("Texas Action"). The patents "are directed to inventive technology relating to computer memory, computer processors and microcontrollers, and computer display interfaces, and/or products containing the same." (Dkt. No. 22-3 ¶ 21.) In addition to REL, Monterey named as defendants Denso Corporation ("Denso"), a Japanese corporation, and Denso International America, Inc. ("DIA"), a wholly a wholly-owned subsidiary of Denso with a regular place of business in Texas. (*Id.* ¶¶ 6-7.) The complaint alleges "[t]he Denso Defendants are an important customer" for REL as they "integrate[] [REL] semiconductor devices and integrated circuits into a wide variety of devices," which they make "for numerous leading auto manufacturers." (*Id.* ¶ 22.)

Denso and DIA (collectively, "DENSO") filed a joint motion to dismiss, arguing "the Complaint fails to identify a single accused DENSO product or any DENSO-specific acts, knowledge, or intent to support its claims of direct, induced, contributory, and willful infringement." (Texas Action, Dkt. No. 16 at 5.)

While the motion to dismiss was pending, on September 19, 2024, REL and DENSO jointly requested the court sever and stay "claims against DENSO pending final resolution of Monterey's identical claims against DENSO's upstream supplier, Renesas, under either the customer-suit exception or traditional stay factors." (Texas Action, Dkt. No. 27 at 5.) The motion

1    asserts REL, as the manufacturer, "is the 'true defendant.'" (*Id.*)

2    In addition, on October 10, 2024, REL moved to transfer the case to the Northern District

3    of California. (Texas Action, Dkt. No. 36.)

4    On December 3, 2024, the Eastern District of Texas granted in part and denied in part

5    DENSO's motion to dismiss. The court concluded Monterey sufficiently stated a claim of direct

6    infringement for all asserted patents; pre-suit induced, contributory, and willful infringement for

7    some of the asserted patents; and post-suit induced, contributory, and willful infringement for all

8    asserted patents. (Texas Action, Docket No. 62.) The motions to sever, stay, and transfer are still

9    pending before the Eastern District of Texas.

**DISCUSSION**

Pending before the Court is Monterey's motion to dismiss, stay, or transfer this declaratory judgment action under the first-to-file rule.

**I.    FIRST-TO-FILE RULE**

"When two actions that sufficiently overlap are filed in different federal district courts, one for infringement and the other for declaratory relief, the declaratory judgment action, if filed later, generally is to be stayed, dismissed, or transferred to the forum of the infringement action." *Futurewei Techs., Inc. v. Acacia Rsch. Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013)[2]; *see also Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982) (explaining the first-to-file rule is "a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district"). The rule "exists to avoid conflicting decisions and promote judicial efficiency." *Futurewei Techs.*, 737 F.3d at 708 (quotation marks omitted). While exceptions to the rule are not rare, "there must be sound reason that would make it unjust or inefficient to continue the first-filed action." *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341,

---

[2] "Resolution of whether the second-filed action should proceed presents a question sufficiently tied to patent law that the question is governed by [Federal Circuit] law." *Futurewei Techs., Inc. v. Acacia Rsch. Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013).

3

1347 (Fed. Cir. 2005) (cleaned up).

In applying the first-to-file rule, courts look to three threshold factors: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues. *See Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). If the case meets these requirements, the court has the discretion to transfer, stay, or dismiss the second-filed action. *See id.* at 628–29; *see also Futurewei Techs.*, 737 F.3d at 708 ("Application of the first-to-file rule is generally a matter for a district court's discretion, exercised within governing legal constraints.").

### A.  Chronology

It is undisputed the Texas Action predates the present action. Monterey filed suit in Texas in April 2024, approximately five months before REA filed suit in this case. REA argues both actions "are in their infancy," noting the "Texas Court has not issued any substantive rulings." (Dkt. No. 28 at 9.) But this factor focuses on chronology, not the stage of litigation. And the Texas Court has since issued a ruling on Denso and DIA's motion to dismiss. So, this factor weighs in favor of applying the first-to-file rule.

### B.  Similarity of the Parties

"[T]he first-to-file rule does not require exact identity of the parties," it only requires substantial similarity of parties. *Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). Here, Monterey is common to both cases—as the plaintiff in the Texas Action and the defendant in the present action. And while REL is the defendant in the Texas Action and REA is the plaintiff in the present action, REL is the parent-company of REA. (Dkt. No. 28-1 ¶ 3.) In light of the parent-subsidiary relationship, the "entities share common interests, rendering them substantially similar parties in this litigation." *See Aqua Connect, Inc. v. SHI Int'l Corp.*, No. CV 19-05662-AB (JPR), 2019 WL 8883452, at *3 (C.D. Cal. Dec. 16, 2019) (concluding the "parent-subsidiary corporate relationship indicate[d] that the two . . . entities share common interests, rendering them substantially similar parties in this litigation."); *see also SMIC, Americas v. Innovative Foundry Techs. LLC*, 473 F. Supp. 3d 1021, 1026 (N.D. Cal. 2020) (concluding parties were substantially similar when the parent entity was named in the Texas Litigation but not the DJ action and a subsidiary was named in the DJ action but not the Texas

Litigation); *Microchip Tech., Inc. v. United Module Corp.*, No. CV-10-04241-LHK, 2011 WL 2669627, at *3 (N.D. Cal. July 7, 2011) (concluding parties were substantially similar when "[e]ach of the DJ Plaintiffs here, except for Silicon Storage Technology (SST), [was] a Defendant in the Texas case" and "SST [was] a wholly owned subsidiary of" a DJ Plaintiff); *McCain v. Racing*, No. 07 CIV. 5729 (JRS), 2007 WL 2435170, at *2 (S.D.N.Y. Aug. 27, 2007) ("Rahal Letterman here and Team Rahal in California plainly represent the same interests where Rahal Letterman is the wholly owned subsidiary of Team Rahal.").

The fact the Texas Action includes two additional defendants—Denso and DIA—does not preclude a finding of substantial similarity because "the first-to-file rule does not require exact identity of the parties." *Kohn L. Grp.*, 787 F.3d at 1240; *see also SMIC,* 473 F. Supp. 3d at 1026 (finding substantial similarity even though "the Texas Litigation involve[d] additional defendants—Broadcom, Cypress and DISH Network—not involved in this action"); *Microchip*, 2011 WL 2669627, at *3 ("It is clear that the parties in this action and in the Texas Case are substantially similar, although the Texas Case includes far more entities that have been accused of patent infringement."). So, this factor weighs in favor of applying the first-to-file rule.

### C. Similarity of Issues

"To determine whether two suits involve substantially similar issues, we look at whether there is 'substantial overlap' between the two suits." *Kohn L. Grp.*, 787 F.3d at 1241 (quoting *Harris Cnty., Tex. v. CarMax Auto Superstores Inc.*, 177 F.3d 306, 319 (5th Cir. 1999)). Here, there is substantial overlap because the Texas Action and the present action involve the same four patents. (Dkt. No. 1 ¶ 1; Dkt. No. 22-3 ¶ 1.) Likewise, the products REA identifies in the present complaint—RH850 and RX600 devices and RL78 microcontrollers—are also at issue in the Texas Action. (Dkt. No. 1 ¶¶ 26, 32, 38, 44; Dkt. No. 22-2 at 2-3.) So, the issues are substantially similar. *See, e.g.*, *SMIC*, 473 F. Supp. 3d at 1026 (concluding issues were substantially similar when "[t]he Texas Litigation allege[d] infringement of the same patents that [were] the basis for Plaintiffs' declaratory judgment claims in this action"); *Microchip*, 2011 WL 2669627, at *3 (concluding issues were substantially similar when "DJ Plaintiffs [sought] a declaratory judgment of non-infringement and invalidity with respect to the same three patents" asserted in the Texas

1  Case).

2  REA asserts the issues are not identical because the present case "will involve REA's
3  marketing and sales efforts, as well as its alleged knowledge of the Asserted Patents" while the
4  Texas Action "will involve REL's alleged actions—*e.g.,* making, using, and selling the Accused
5  Products." (Dkt. No. 28 at 11.) But this factor requires not exact but substantial similarity. *See*
6  *Kohn L. Grp.*, 787 F.3d at 1240 ("The issues in both cases also need not be identical, only
7  substantially similar."). That this case may require some additional testimony does not negate the
8  substantial overlap of issues resulting from the presence of the same four patents in each case.

9  Further, REA's emphasis on the significance of its testimony in this case is inconsistent
10  with REL's assertions in the Texas Action. In seeking to stay claims against Denso and DIA in
11  the Texas Action, REL argued Denso and DIA—"mere resellers"—have no knowledge "of the
12  accused circuitry or operational steps in Renesa chips" and do not "modify or customize that
13  circuitry or functionality" because "Renesas forbids its downstream customers from doing so."
14  (Texas Action, Dkt. No. 27 at 5.) So, REL asserted, "Monterey has not and cannot offer a direct
15  infringement theory against DENSO that is separate or distinct from that levied against Renesas."
16  (*Id.*) REA, like Denso and DIA, sells the accused products to customers. (Dkt. Nos. 1 ¶ 21; 28-1
17  ¶ 6.) So, REA has not persuaded the Court an infringement theory against REA will be
18  sufficiently separate or distinct from that levied against REL to render the issues in the two cases
19  different for purposes of the first-to-file rule.

20  **II.     EXCEPTIONS TO THE FIRST-TO-FILE RULE**

21  REA argues the customer-suit exception and the forum shopping exception preclude
22  application of the first-to-file rule.

23  **A.     Customer-Suit Exception**

24  The customer-suit exception provides "[w]hen a patent owner files an infringement suit
25  against a manufacturer's customer and the manufacturer then files an action of noninfringement or
26  patent invalidity, the suit by the manufacturer generally take precedence." *In re Nintendo of Am.,*
27  *Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014). The customer-suit exception "exists to avoid, if
28  possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally

6

the 'true defendant' in the dispute." *Id.*

In fact, the customer-suit exception's rationale supports application of the first-to-file rule in this case. REL is the manufacturer of the allegedly infringing products. (Dkt. No. 28-1 ¶ 2; Texas Action, Dkt. No. 27 at 5 ("[REL] is a Japanese semiconductor corporation that manufactures microcontrollers and systems-on-a-chip"); *id.* at 15 (REL "is the only source of accused chips").) REA, in contrast, is a reseller. (Dkt. No. 28-1 ¶ 6 ("REA imports the Accused Products into the United States . . . and sells them to U.S. customers.").) So, the suit against REL in the Eastern District of Texas should take precedence over the present suit involving a reseller.

REA's emphasis on its role as not only a reseller but the "primary *U.S.* distributor" of the accused products misses the mark. (Dkt. No. 28 at 12.) The customer-suit exception prioritizes suits against manufacturers. REA cites no case supporting its novel application of the customer-suit exception to prioritize the case involving a distributor over the case against the manufacturer. So, the customer-suit exception does not preclude application of the first-to-file rule.

### B.   Forum Shopping Exception

Neither does the forum shopping exception, which permits a departure from the first-filed rule of priority "where forum shopping alone motivated the choice of sites for the first suit." *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989).

REA's assertion the Texas Action has "no legitimate ties to the EDTX [Eastern District of Texas]" is inconsistent with the complaint. (Dkt. No. 28 at 13.) In the Texas Action, Monterey alleged DIA "has a permanent and continuous presence in, has committed acts of infringement in, and maintains regular and established places of business in" the Eastern District of Texas. (Dkt. No. 22-3 ¶ 11.) And the Eastern District of Texas recently concluded the complaint sufficiently stated claims against DIA and its parent company, Denso. (Texas Action, Docket No. 62.) Because the Texas Action has ties to Texas, the Court cannot conclude forum shopping alone motivated Monterey's choice in filing suit.

For this reason, REA's citation to *Apple Inc. v. VoIP-Pal.com, Inc.,* 506 F. Supp. 3d 947 (N.D. Cal. 2020), is distinguishable. In *Apple*, the alleged infringer filed suit in Texas even though it was "neither incorporated in nor headquartered in Texas." *Id.* at 960. Here, in contrast,

7

at least one defendant in the Texas Action has ties to Texas. Further, in addition to the forum shopping factor, the *Apple* court declined to apply the first-to-file rule because the cases were filed just days apart and the court had already "resolved related cases involving patents from the same family that share a common specification, title, parent application, inventor, and owner as well as substantially similar technology and accused products as the instant cases." *Id.* These additional factors, which weighed against applying the first-to-file rule in *Apple*, are not present here.

To the extent REA is implying Denso and DIA as resellers are illegitimate defendants added solely for purposes of venue, then REA—also a reseller of the accused products—is similarly situated. So, this argument is entitled minimal weight.

Finally, REA contends "Monterey's motion is notably silent on the convenience factors" courts consider in deciding a motion to transfer brought pursuant to 28 U.S.C. section 1404(a). (Dkt. No. 28 at 13.) But "normally, this convenience argument should be addressed to the court in the first-filed action, not the court in the later-filed action." *Microchip,* 2011 WL 2669627, at *7. REA points out "[i]n appropriate cases it would be relevant for the court in the second-filed action to give consideration to the convenience of the parties and witnesses." (Dkt. No. 28 at 13 n.4 (quoting *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982).) But REA makes no argument as to why this is an appropriate case for doing so. And the *Pacesetter* court observed an appropriate case would be one where the first action involves a customer and the second action involves the manufacturer—which is not the case here. So, the convenience arguments under 1404(a) are more appropriate for consideration by the Eastern District of Texas. Indeed, the motion to transfer the infringement action to this district—filed by REL, Denso, and DIA in the Texas Action—is currently pending. (Texas Action, Dkt. No. 36.)

### III. STAY

Having concluded the application of the first-to-file rule is appropriate in this case, the Court in its discretion stays the present action pending resolution of the first-filed Texas Action. *See Alltrade*, 946 F.2d at 623 (noting that courts have discretion to dismiss, stay or transfer an action where the requirements of the first-to-file rule are met). Because REA is not a party to the Texas Action and the deadline to add additional parties has passed, (Texas Action, Dkt. No. 37 at

5), dismissal is inappropriate. And because the Eastern District of Texas is currently considering a motion to transfer the case to this court pursuant to section 1404(a), a transfer order is premature. A stay "is consistent with the policy of the first-to-file rule, which is to maximize judicial economy, consistency, and comity," because it avoids the possibility of conflicting judgments and prevents duplicative discovery. *See Kohn L. Grp.,* 787 F.3d at 1240.

## CONCLUSION

Because the first-filed Texas Action involves substantially similar parties and issues, Monterey's motion to stay the case in its entirety is GRANTED pending resolution of the Texas Action. The parties shall jointly file a status report on or before December 1, 2025 updating the Court on the status of the Texas Action. If REA believes circumstances warrant lifting the stay in this action prior to the December date, it may move the Court do so.

This Order disposes of Docket No. 22.

**IT IS SO ORDERED.**

Dated: December 10, 2024

_____
JACQUELINE SCOTT CORLEY
United States District Judge