UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENESAS ELECTRONICS AMERICA INC., <br><br> Plaintiff, <br><br> v. <br><br> MONTEREY RESEARCH, LLC, <br><br> Defendant. | Case No. 24-cv-06223-JSC <br><br> **ORDER GRANTING PLAINTIFF'S MOTION TO SUBSTITTUE AND DENYING DEFENDANT'S MOTION TO DISMISS** <br><br> Re: Dkt. Nos. 39, 40, 43, 45, 46 |

In April 2024, Monterey Research, LLC ("Monterey") sued Renesas Electric Corporation ("REL") in the Eastern District of Texas, alleging REL infringed four patents. Approximately five months later, Renesas Electronics America Inc. ("REA"), REL's wholly-owned subsidiary, filed the present action seeking declaratory judgment of non-infringement as to the same four patents. (Dkt. No. 1.)[1] In December 2024, the Court stayed the second-filed action pending resolution of the first-filed Texas action. (Dkt. No. 38.) Monterey subsequently sold the alleged patents to MR Licensing LLC and now moves to dismiss for lack of subject matter jurisdiction, alleging the sale eliminated any actual case or controversy between Monterey and REA. (Dkt. No. 40.) REA opposes dismissal, and instead requests substitution of MR Licensing for Monterey under Federal Rule of Civil Procedure 25(c). (Dkt. Nos. 44, 46.) After carefully considering the parties' written submissions, substitution is appropriate, so Monterey's motion to dismiss is DENIED and REA's motion to substitute is GRANTED.

**BACKGROUND**

Monterey filed the Texas suit in April 2024, accusing REL and its subsidiaries of

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1  infringing the following patents: 6,243,300, 7,679,968, 7,089,133, and 7,825,688.  *Monterey*
2  *Research, LLC v. Renesas Elecs. Corp.*, No. 2:24-cv-00238 (E.D. Tex. Apr. 10, 2024) ("Texas
3  Action").  Monterey alleged REL's RH850 and RX600 devices infringe the alleged patents, as
4  well as various microcontroller devices.  (Texas Action Dkt. No. 1 ¶¶ 30, 52.)

5  REA—REL's wholly-owned subsidiary—"sells, offers to sell, has sold, and/or has offered
6  to sell the RH850 . . . and certain other accused Renesas devices in the United States."  (*Id.* ¶ 21.)
7  REA filed this suit in September 2024, seeking declaratory judgment of non-infringement as to the
8  four patents at issue in the Texas Action ("California Action").  (Dkt. No. 1 ¶ 1.)

9  The following month, Monterey moved to dismiss, stay, or transfer the California Action.
10 In December 2024, the Court stayed the California Action pending resolution of the first-filed
11 Texas Action.  (Dkt. No. 38.)  Separately, REL moved to transfer the Texas Action to this District.
12 (Texas Action Dkt. No. 36.)  Because the Texas court has not ruled on that motion, the Texas
13 Action has "proceeded into discovery and claim construction."  (Dkt. No. 46 at 3.)

14 On March 27, 2025, Monterey entered into a Patent Assignment Agreement
15 ("Agreement") with a third party—MR Licensing—and assigned all four alleged patents to MR
16 Licensing.  (Dkt. No. 40-1 at 2.)  Under the Agreement, Monterey "transferred to MR Licensing
17 the right to sue and collect damages for all past, present, and future infringement, and did not
18 retain any interest in the asserted patents."  (*Id.*)  REA asserts Monterey sold the patents as part of
19 a "reset" plan because it "severely prejudiced [the Texas Action] by failing to engage in basic
20 discovery."  (Dkt. No. 46 at 3; Dkt. Nos. 44-1 at 2; 44-3 (REA's counsel attesting to discovery
21 delays in the Texas Action).)  As REA observes, Monterey retains a financial interest in the
22 outcome of the litigation.  (Dkt. 39-3 at 3.)

23 Monterey moved to dismiss the Texas Action the next month, arguing the sale resulted in a
24 loss of standing because Monterey assigned away its right to sue.  (Texas Action, Dkt. No. 78 at
25 1.)  REL opposed and argued MR Licensing should be substituted for Monterey.  (Texas Action,
26 Dkt. No. 82.)  The Texas court has yet to rule on the issue, and claim construction continues to
27 proceed.

28 The same day Monterey moved to dismiss the Texas Action, MR Licensing filed a new

2

patent infringement action in the Eastern District of Texas. *MR Licensing LLC v. Renesas Elecs. Corp.*, No. 2:25-CV-00441-JRG (E.D. Tex. Apr. 25, 2025) ("New Texas Action"). The New Texas Action defendants have not yet answered the complaint. *Id.*

Monterey then moved to dismiss the California Action on May 7, 2025. (Dkt. No. 40.) Monterey argues the Court lacks subject matter jurisdiction because the patent sale eliminated any case or controversy between REA and Monterey. REA opposes dismissal, arguing MR Licensing can instead be substituted in the present action pursuant to Federal Rule of Civil Procedure 25(c).

## DISCUSSION

### A. There is no longer a case or controversy between Monterey and REA.

Monterey moves to dismiss under Federal Rule of Civil Procedure 12(h)(3), arguing because it transferred the alleged patents and its right to seek damages for patent infringement to MR Licensing, there is no longer a case or controversy between Monterey and REA. Monterey is correct. The Declaratory Judgment Act governs suits for declaratory judgment, and subject matter jurisdiction under both the Act and Article III is proper when a suit is a "case of actual controversy." 28 U.S.C. § 2201; *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). A "case or controversy adequate to support jurisdiction" "necessarily" exists when a party has "actually been charged with infringement of the patent." *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993) (holding a district court has jurisdiction over a counterclaim for declaratory judgment of non-infringement).

Here, a case or controversy existed at filing because REA—as a subsidiary of REL—was charged in the Texas Action with patent infringement. (Texas Action, Dkt. No. 1 ¶ 10 (alleging REL and other defendants, "directly and/or through subsidiaries and intermediaries" infringed the patents).) But Monterey no longer owns these patents, and per the Agreement, it no longer retains the right to sue or collect damages in relation to the alleged patents. (Dkt. No. 40-1 at 3.) Monterey is no longer the party with a right to litigate this issue; the assignee, MR Licensing is, and it now brings infringement claims against REL in the New Texas Action. So, a case or controversy no longer exists between Monterrey and REA. But, as explained below, it does not

3

follow that the Court must dismiss this action for lack of subject matter jurisdiction.

**B. There is a case or controversy between MR Licensing and REA.**

Although in the New Texas Action MR Licensing sues REL rather than REA, there is a case or controversy between MR Licensing and REA. "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *SanDisk Corp. v. STMicroelectronics, Inc.,* 480 F.3d 1372, 1381 (Fed. Cir. 2007). In the New Texas Action, MR Licensing alleges REA's parent company infringed the alleged patents, and that the devices REA sells unlawfully use technology for which MR Licensing owns the patents. (*See* Dkt. Nos. 1 ¶ 21; 46 at 4.) So, MR Licensing is effectively forcing REA to pursue "arguably illegal behavior," or else abandon "that which [it] claims a right to do." *SanDisk*, 480 F.3d at 1381. Moreover, in the New Texas Action, MR Licensing charges REL and other defendants with infringement "directly and/or through *subsidiaries* or intermediaries." (New Texas Action, Dkt. No. 1 ¶ 6 (emphasis added)). A case or controversy "necessarily" exists when a party has "actually been charged with infringement of the patent." *Cardinal Chem. Co.*, 508 U.S. at 96. While Monterey characterizes REA as "merely a peripheral reseller," MR Licensing's complaint in the New Texas Action charges REA, as a subsidiary, with infringement, even if it does not name REA as a defendant. (Dkt. No. 50 at 5.) So, a case or controversy necessarily exists between MR Licensing and REA.

**C. It is both permissible and appropriate to substitute MR Licensing for Monterey under Rule 25(c).**

Rule 25(c) provides "if an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c). Rule 25(c) is designed to allow an original action to continue "unabated," without need for refiling a new case, when an interest in alleged property is transferred from one party to another. *3M v. Eco Chem, Inc.*, 757 F.2d 1256, 1263 (Fed. Cir. 1985). The Rule applies only to transfers occurring during the litigation. *Horphag Research Ltd. v. Consac Industries, Inc.*, 116 F.3d 1450, 1453 (Fed. Cir. 1997). Personal

4

jurisdiction over the substituted party and venue are imputed so long as they were properly established over the original party. *3M*, 757 F.2d at 1263-64.

In *3M*, for example, the court held it maintained diversity subject matter jurisdiction even though the substitution destroyed complete diversity, explaining "the transferee is not joined because its substantive rights are in question; rather, the transferee is brought into court solely because it has come to own the property in issue." *Id.* at 1263. Put another way, the underlying case or controversy is not altered—rather, the parties with interest in the dispute's outcome are altered. Other courts characterize Rule 25(c) substitution as a cure for a temporary loss of subject matter jurisdiction resulting from an interest transfer. *See, e.g.*, *Reibman v. Renesas Elecs. Am., Inc.*, No. 11-CV-03847-JCS, 2014 WL 251955, at *7 (N.D. Cal. Jan. 7, 2014) ("Rule 25(c) enables a court to restore subject matter jurisdiction by substituting into the action the non-party successor in interest" as long as "a case or controversy exists between the successor and the remaining party"); *see also Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1204 (Fed. Cir. 2005) (holding a judgment was valid despite a temporary loss of standing during litigation because a "temporary loss of standing during patent litigation can be cured before judgment").

Whether characterized as a procedural mechanism to maintain jurisdiction or to restore a temporary loss of jurisdiction, substitution under Rule 25(c) is appropriate here. First, as described above, there is an actual case or controversy between MR Licensing and REA. *See Trend Micro Corp. v. Whitecell Software, Inc.*, No. C 10-02248 WHA, 2010 WL 4722504, at *3 (N.D. Cal. Nov. 15, 2010) ("[N]othing in FRCP 25(c) purports to preserve subject-matter jurisdiction under the Declaratory Judgment Act or Article III where the transfer itself eliminates a substantial controversy [] between parties") (cleaned up). Second, substitution promotes efficiency and avoids requiring REA to file a new case when the core controversy—the four patents REL and REA are accused of infringing—is the same. Indeed, this is precisely the situation 25(c) is designed to address, as the substitution would allow the original action to continue "unabated." *See 3M*, 757 F.2d at 1263.

While Monterey argues substitution cannot be used "to cure this Court's lack of subject

matter jurisdiction," (Dkt. No. 50 at 3,) it misunderstands Rule 25(c). A case can continue so long as there is subject matter jurisdiction when the transferee is substituted, even if there would not be subject matter jurisdiction without substitution. Much of Monterey's argument is based on an Eastern District of Virginia case, *Qimonda AG v. LSI Corp.*, where the court held substitution could not cure subject matter jurisdiction deficiencies after a jurisdictional challenge was already raised. 857 F. Supp. 2d 570, 581 (E.D. Va. 2012.) To hold otherwise, the *Qimonda* court said, would be "to override substantive constitutional limits on federal judicial power." *Id.* This reasoning contradicts Federal Circuit precedent, which is binding in this patent action. In holding a case could continue when substitution destroyed complete diversity, the *3M* court reasoned "substitution of a party under Rule 25(c) does not violate the proscription of Rule 82 that the rule 'not be construed to extend or limit the jurisdiction of the United States district courts.'" *3M*, 757 F.2d at 1262 (citing Fed. R. Civ. P. 82). This is because Rule 25(c) functions as a "procedural mechanism for . . .convenience" that does not "affect the substantive aspects" of a case—rather, the substituted party "is brought into court solely because it has come to own the property in issue." *Id.* at 1263 (cleaned up). Moreover, if a case must be dismissed anytime a temporary jurisdictional defect arises, there are few, if any, occasions where Rule 25(c)'s purpose of allowing "unabated" case continuation is realized. *3M*, 757 F.2d at 1263. Accordingly, Monterey's understanding of Rule 25(c) is inconsistent with the purpose and design of the Rule, and Rule 25(c) may be applied here.

**D. Service**

Last, Monterey argues substitution is inappropriate because REA has not served its Rule 25(c) motion on MR Licensing. Rule 25(a)(3) requires a motion to substitute be served "on nonparties as provided in Rule 4." Fed. R. Civ. P. 25(a)(3). Rule 4, in turn, allows serving a corporation in a manner conforming with "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is being made." Fed. R. Civ. P. 4(e)(1), (h). Here, service was made in Texas, and the Texas Secretary of State may act as "an agency of an entity for purpose of service of process, notice, and demand" when "the registered agent of the entity cannot with reasonable diligence be found at the

6

registered office of the entity." Tex. Bus. Orgs. Code Ann. §§ 5.251; *see also BLS Dev., LLC. v. Lopez*, 359 S.W.3d 824, 827 (Tex. App. 2012) (stating service via the Texas Secretary of State is permissible "as long as the record as a whole shows that the registered agent could not with reasonable diligence be found at the registered office"). Put another way, there is no requirement the serving party attempt service upon a registered agent elsewhere if it is unable, upon exercising "reasonable diligence," to serve them at the registered address. *BLS Dev.*, 359 S.W. 3d at 827.

So, REA properly served MR Licensing. Its affidavit of service shows it served the Texas Secretary of State per FRCP Rule 4(e)(1) and the Texas code. *See* Tex. Bus. Orgs. Code Ann. §§ 5.251. In addition, REA's counsel declares its process server previously attempted to serve MR Licensing's registered agent, Alfred Fabricant, at MR Licensing's registered address in Marshall, Texas. (Dkt. No. 51-1 ¶ 3.) Counsel attests:

> Upon arriving at the property, Mr. Daily [the process server] discovered that it was a vacant home. A neighbor identified the home's caretaker as Laura Durham. Mr. Daily spoke to Ms. Durham, who informed Mr. Daily that the property's owner is Alfred Fabricant. Later in the day, Mr. Daily attempted to leave the documents with Ms. Durham. Ms. Durham advised Mr. Daily that she had spoken with Mr. Fabricant, who instructed her not to accept the documents.

(*Id.*)

While Monterey argues MR Licensing was not served, it does not challenge REA's evidence regarding service. Nor does Monterey argue REA did not exercise reasonable diligence in attempting to serve Mr. Fabricant. Regardless, REA was reasonably diligent in attempting to serve MR Licensing because it *did* look to MR Licensing's registered office but was refused. (Dkt. No. 51-4.) And because REA did not need to look any further than MR Licensing's registered office before serving via the Texas Secretary of State, MR Licensing was properly served. *See BLS Dev.*, 359 S.W. 3d at 827 (concluding so long as the serving party was reasonably diligent in attempting service at the registered office, there is no requirement to attempt service beyond the registered office).

## SEALING MOTION

Monterey also moves to seal Exhibit A to the Alfi Guindi declaration supporting its motion

to dismiss. (Dkt. No. 39.) REA subsequently filed two administrative motions to consider whether references to Exhibit A in its briefs should be sealed. (Dkt. Nos. 43, 45.) Monterey asserts Exhibit A "is a confidential patent license agreement between Monterey and third-party MR Licensing LLC" which "contains confidential business information of Monterey and MR Licensing." (Dkt. No. 39-1 ¶ 2.)

Because Exhibit A contains the "confidential business information of Monterey and MR Licensing," (Dkt. No. 39-1 ¶ 2,) it could "become a vehicle for improper purposes." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th. Cir. 2006). So, Monterey articulates "compelling reasons" sufficient to outweigh the public's interest in disclosure. *Kamakana*, 447 F.3d at 1179.

Accordingly, Monterey's motion to seal Exhibit A is GRANTED. REA's administrative motions to consider whether references to Exhibit A should be sealed are GRANTED as to the content at Dkt. Nos. and 43- 3 at 2-3 and 45-3 at 4. But REA's motions are DENIED as to the content at Dkt. Nos. 43-3 at 4 and 45-3 at 5 because the content is the basis for Monterey's motion to dismiss and reveals only generalized information about the parties.

## CONCLUSION

For the above reasons, there is no subject matter jurisdiction deficiency here given there *is* a case or controversy between REA and MR Licensing. Additionally, substituting MR Licensing under Rule 25(c) promotes efficiency and ensures REA need not litigate the same underlying controversy in an entirely new case. Accordingly, Monterey's motion to dismiss is DENIED and REA's motion to substitute is GRANTED.

This order disposes of Docket Nos. 39, 40, 43, 45, and 46.

**IT IS SO ORDERED.**

Dated: July 25, 2025

JACQUELINE SCOTT CORLEY
United States District Judge